at all on behalf of the Appalachians to Ronald N. Cicinelli, on behalf of the Appalachians to Keith A. Carlson. Mr. Cicinelli, you may proceed. Good morning. You may proceed. Good morning, Your Honors. May it please the Court. My name is Ronald Cicinelli, and I'm representing Plaintiff from Appalachia, Michael Schaefer, on his oral argument for this morning. Your Honors, the crux of Mr. Schaefer's appeal centers on the issue of whether or not he was engaged in an act that involved a special risk. And to save this Court's time, I won't rehash the facts, but only briefly state that Michael Schaefer was a police officer who was participating in a mandatory physical fitness test. And during the course of that test, injured himself by tearing his rotator cuff. Mr. Cicinelli, clear this up for me. He was required to do the 40%, correct? Yes, ma'am. When he went from 40 to 80, how did that occur? Did they say to him, hey, do you want to do 80? Or did they say, do you want to go 50, 60, 70? And he said, no, let's just go 80. How did that occur? That part, Your Honor, I believe is discretionary. According to Mr. Schaefer, in the past he's always done 80. It was never an issue. So he went from 40 to 80 because he's required. He just said, I'm going to go to 80. Correct. Okay. And the higher the percentile, the more compensatory time off he'd receive. So Mr. Schaefer's not a big man physically. So you don't disagree. The 40% was mandatory. The 80 was discretionary. That's correct. It's discretionary, but it's encouraged, correct? Absolutely, Your Honor. You don't really make this argument, but the encouraging would be, seem to be consistent with wanting to make sure that your police officers prepare for it and that they're in good physical condition so they can meet the demands of the job. That's right, Your Honor. I'm sorry. Is that part of your argument? Yes, absolutely. You didn't really articulate that in the brief, but it makes sense that the department would want their officers to be in better shape than the average Joe on the street so they could meet the demands of the job. Well, Your Honor, these types of policies are becoming more and more common. Call them what you may. Some departments are calling them wellness plans. You're hearing them more and more in the corporate setting, in particular the public sector. The benefit for the government entity or the corporation is that they may get a reduction in their premiums from the insurance company. Now, I don't know that to be the case here, but usually that's why wellness plans are instituted. Now, this mandatory physical fitness test, as Your Honor articulated, it was a departmental policy that the department wanted, and the union, the Metropolitan Alliance of Police, agreed to it in their collective bargaining agreement. Now, the board's contention that participating in a mandatory physical fitness test is not a special risk that's inherent to police officers, I would strongly argue, is incorrect. Was it an option given through the collective bargaining agreement? Absolutely. No, it's not an option, Your Honor. Participating in the test was mandatory. So lifting the 40% was mandatory? Yes. Whether lifting the 80% was within his discretion, whether to go 50, 60, 70, 80 was in his discretion? That's correct. Whether to lift at all after the 40% was within his discretion? That's correct. Then please comment on the Supreme Court's decision in Johnson that focused on whether or not a police officer has an option to respond to a citizen's complaint. I mean, that was the crux of the issue in Johnson was the officer was walking across the street and was injured, but was responding to a citizen asking for help. And the Supreme Court said that officer had absolutely no option in whether or not to respond to that officer or whether to respond to that citizen. But here it seems like your client had every option in the world after 40%. Your Honor, you're correct. But unlike Johnson, we have the collective bargaining agreement. The village has to assume that if you're going to bargain to exceed the standards, that the risk is going to increase. It's almost as if you're on a Barbie wear. You contractually agreed to put in the incentive clause to receive extra compensatory time if you exceed the minimums. If the village never wanted to assume the higher risk that came with that, then why put it in the contract at all? If the village would have told all of the officers in language in that collective bargaining agreement that any officer who opts to exceed the minimum is now going beyond what we would consider an active duty and the liability is now on you, well, then I would say their argument would hold more weight. But what officer knew that? It just happened that Mike Schaefer was the one who tore his rotator cuff. Furthermore, Your Honor, I'd ask when does it attach? It's a fair question in Johnson. When does the special risk attach, if at all? I don't think the defendant board is arguing that had he injured himself while trying to lift the first lift, the 40%, that would have constituted an active duty. But because he went beyond that and used discretion, well, now he took himself out of what's defined as an active duty. Logically, to me, when does the special risk attach? He could have easily injured himself lifting 10 pounds on the first lift. It just so happened that didn't happen. He hurt himself on the second lift. If he had hurt himself on the first lift, he probably wouldn't be here, correct? Absolutely. All three independent medical examiners certified Mike Schaefer as permanently disabled. The injury he suffered was catastrophic. Would you be here if he injured himself preparing for the test? I'm sorry. The day before the test, he's getting ready for the test. He's lifting weights, getting ready for the test. Is that an active duty, getting ready for the test? No, it's not. So the issue is because even though he's doing a discretionary act, he was doing it at wherever the police were holding this test. Well, it wasn't a discretionary. I just want to be clear. I know. He had to be there for the test. He had to lift the 40%. Otherwise, he's fired. I understand that. Right. But what you're saying is because he's at the location where they're doing this, during the time that they're doing this mandatory test, he chooses to do this discretionary part of the test, that that makes it an active duty. Not only that, Your Honor, the village gave him that right to use that discretion. They told him. They agreed, I should say. You want more time off? You want to exceed the minimum? We'll reward you. You want to go to 50, 60, all the way up to 100% of your weight? Or have you been running a mile and a half, which is also part of the power test? We'll reward you with extra time. How does providing that discretion transfer it into a duty? He's not required to do it. The duty attached the minute he put on his gym shoes and his gym shorts. It's our argument to attend the mandatory physical fitness test. No ordinary citizen in any walk of life is mandated to take a mandatory physical fitness test. The special risk is immediately attached the minute he put on his gym shoes and went inside the gymnasium to perform the test. He could have been injured right at the onset of the test or at the very end. It didn't matter. Do they make him do the 40% first or do they say go with whatever you want right off the bat? How does the test work? I believe it's 40% first. So he has to pass the mandatory. Then we get into this whether you want an extra time off. That's right. And I had asked one of the witnesses in the hearing, who happened to be a sergeant that ran the test, if it's encouraged to take the test. And his response was yes, I mean to exceed the minimums. So almost every one of those officers. So this guy was like 130 pounds and he said, you know what, I'm going on my honeymoon. I need a couple of days off, extra time off. So what would that fire up with 500 pounds? Everybody would have said fine, go for it. Have a nice day. I would hope the sergeant that was running it. I don't know. I would hope that too. But I mean, it's not mandatory. It's all within someone's discretion. Whose discretion is it? Well, it does state 100%. So logically, why would anyone do more than 100% of his body weight? Is it body weight or is it percentile, some type of percentile ranking? Percentile of your body weight. So 40%. It's all body weight. So it's body weight, correct. In your reply brief, you say where construction of pension statutes is necessary, the rule is that the pension act must be liberally construed in favor of the rights of the pensioner. You cited the board of trustees versus Christie in the Georgia case. Do you believe that's a firm, that site has a firm foundation? Were you aware of the fact that that case was reversed? It was not, Your Honor. But a case was reversed by the Supreme Court of the state of Georgia. It was overruled, not reversed. Pardon me? It was overruled. It was overruled in Savannah versus Stevens. That was an attachment to our general rule, which is in Illinois the general rule is to favor the pensioner, the applicant. In that case, it's just attached to the general rule. You've addressed the special risk portion of the definition under 5113. What about the second part of that? Is this a police duty? It's certainly not imposed on a policeman by the statutes of the state or by the ordinances of the city. I take your argument as it's a police regulation of the city based upon the CBA, that this is a duty for him? Well, Your Honor, when a collective bargaining agreement is ratified, it's usually passed by ordinance. And so the village was fully aware of what they agreed on with that collective bargaining agreement. So, yes, it did become part of the ordinance. So it's the same analysis then whether this discretionary act is part of the test or not, part of the test that's mandated by the ordinance, the discretionary lift, I should say. Well, the discretionary lift came into the collective bargaining agreement. The department wanted this policy. Why they wanted it, I don't know. I articulated to the court earlier, more than likely it's a form of a wellness plan. There was some monetary benefit possibly for the village to institute a mandatory physical fitness test. Certainly, we have expectations that our law enforcement officers are going to be in shape in order to perform their duties properly. But that doesn't necessarily equate to a mandatory physical fitness standard for every department. This particular department had a policy. And so the union agreed to the policy. The policy then was also codified in the general order. So it was made part of the collective bargaining agreement and was also part of Director James Will's general order. So there was no discretion, no option but to take the test. The real crux is when does the special risk attach? And the contention by the board, in my opinion, is that it attaches after the officer or individual uses discretion to exceed the minimum. I argue different. I am arguing on plaintiff's behalf that that special risk attached, again, the minute he was required to step into the gym. Because no ordinary citizen is required to do that. We are on the second house. Sorry. I think, your honors, I've covered our you maintain standard of review is the noble. Yes, sir. Because it's you think it's clearly a question of law. Yes, I do. Even though your argument, you've suggested it's a question of law. It is also a lot of policy considerations to whether or not, in the view of the board, he was performing an active duty. Would you agree there's it's a gray area because there's a lot of policy considerations. Why would a village want to offer this incentive or why the department would encourage officers to go the additional mile on their own? Even though they're not required to. That's really a gray area. It's a lot of policy considerations. As you articulated, some of the policy reasons behind asking someone to perform the additional test is they want to encourage better physical fitness. Not just for monetary reasons, for insurance purposes, et cetera, but also so that the officers can meet the demands of duty when they are when they are acting in the line of duty. Correct. I would agree. I would agree. There is a very broad gray area here. And there are many, many departments in Illinois, especially in this second district that have mandatory physical fitness testing. Would you concede that there are districts in similar situations that have found the clearly erroneous standard of review to be in play here? Because you have a given set of facts, but applying the law to the given set of facts is a clearly erroneous standard as opposed to a de novo standard. I cite the Jones case out of the fourth district, the Merlo case out of the first district. I know this district in White and some of these other cases has gone de novo pretty much. Correct, Your Honor. I mean, I would concede that Justice Paquette has brought up a valid point that this is a very gray area. And it's a decision, in my opinion, that has great ramifications. But at the same time, it's important to understand that this case is unique from the other cases that the Defendant Board has cited, and that we're dealing with a collective bargaining agreement. The litany of cases that were cited in the response brief dealt with lifting box, writing a traffic ticket, having an officer's foot run over by the car, an evidence technician traveling to the laboratory and getting in a traffic accident, and then the courts narrowly constructing on what is an act of duty in those individual cases. But in our case, what distinguishes our case is we had a collective bargaining agreement that afforded the officers the discretion to exceed the minimum. So, again, my contention is that that special risk attached the minute he had walked into the gymnasium. Thank you, Mr. Cicilla. You will have time for rebuttal argument. Thank you, Your Honor. Mr. Carlson, you may proceed. Good morning, and may it please the Court. My name is Keith Carlson. I'm here on behalf of the defendants of the Lake and the Hills Police Pension Board. I think probably to begin with, a large portion of your discussion, as I watched it, was about the mandatory nature of the act. And from the pension board's perspective, that's relatively irrelevant with all due respect. Every employee, by virtue of taking a job, has mandatory requirements of doing that job, showing up to work, showing up for work on time. Some have uniforms. Some are required to carry special equipment. In this case, there was a requirement that was agreed to by a collective bargaining agreement, by a rule, by a policy, whatever. But you don't disagree that if he were injured with the 40 percent, that that would have been in line with it. I don't agree with that. You don't agree? I do not agree with that. I believe that the pension board, and it's speculative, as the pension board would be in a proper as an administrative agency to issue an advisory opinion. But no, I don't believe that lifting weights does not have a civilian corollary. As has been articulated by many districts in the state, as well as by the Supreme Court, that you have to have a special risk that is unique to police work. And there's nothing special about working out. People, unlike me, choose to do that. I probably should do that. But the point is, there is no special work inherently unique to police work that does not have a civilian corollary. What can other professions, like attorneys, who are not required to take a physical test to get the job, police officers, they have to take both a physical test, a written test, and an oral examination before they're considered. Correct. But we are required. And this CBO, the Collective Bargaining Agreement, carries that forward. Not only are you going to be required to be physically fit to get the job, to get in line for the job, you're going to have to remain physically fit in order to maintain your status as a police officer. And, Your Honor, I don't think that that's different than any other profession than maintaining certain minimum job qualifications. For instance, I have to go to continuing legal education classes every year in order to maintain my fitness as an attorney. There are a variety of jobs. I believe the term Mr. Cincinnati used in an oral argument was that wellness plans, which is what he tried to liken this to, is becoming more and more common in the corporate setting, thereby conceding that there are significant civilian corollaries to this sort of fitness testing. But those fitness testings in the corporate world is more towards insurance, isn't it? I don't know that ever. They're not asking some accountant at Deloitte, Touche, or wherever to get into shape to do his job, are they? I don't know what the motivation is behind it, but with all due respect, Justice Shostak, I don't think that it's relevant because the employer's motivation for requiring employees to do things has never been a test in a pension case. The test has always been that you must prove, that the applicant must prove that they are engaged in active duty, unique to police work, that does not have a civilian corollary, that involves a special risk. Regardless of what the collective bargaining agreements ask you. First of all, the pension board is a separate entity from the village. And with all due respect to Mr. Cincinnati's argument, he regularly continues to talk about this risk that's going to be assumed by officers. The village can assume additional risk by asking officers to do things, but that does not mean change the pension code. The pension code is not subject to the collective bargaining agreement. Parties are not free to bargain new benefits under the pension code, and as such, they can't impose new burdens upon the pension board based upon a collective bargaining agreement. In addition to that, it's not like Officer Schaefer is offered no benefits for being injured. He was given a non-line-of-duty disability benefit, and he may have received workers' compensation benefits. What the village assumes is an additional risk in the things that it can control. For instance, workers' compensation. Was he at work? Did he get hurt while doing some sort of work duty? Yes. But those are not the same as being involved in active duty. There are four cases that we cited in our brief that I think are illustrative here. He's basically saying simply because it was mandatory and mandated by the policies of the police district, police board, or whoever, mandated by the policy of the police department, that that mandatory nature doesn't satisfy the special risk definition. Virtually everything a police officer or any employee does at work is in some sort of direction or policy of its employer. And, in fact, in White v. Aurora, this court in 2001 held that whether or not something is mandatory is irrelevant. There was a dissent issued in that case, and they took issue with it. And, in fact, this court wrote, the dissent focuses on the fact that White was following orders by writing tickets rather than focusing on the nature of the act. An officer is entitled to line-of-duty benefits only when he was injured while engaging in an act inherently involving special risk not ordinarily assumed by a citizen in the ordinary walks of life. Of course, this court also, in Alm, took issue with White. I agree, and I understand. But Alm is totally different. Alm is the precursor to Jones v. Bloomington, which you were talking about, where you talk about distracted driving or distracted riding a bike. There's nothing different here. Doing a bench press in this test provided no special additional risks because it was a police officer that an insurance person or anyone else engaging in a fitness test would be required to do. There was nothing special about this bench press. He wasn't required to do it while blindfolded, standing on his head, or some other sort of criteria. In Alm, he had a police officer who had additional equipment on him that he was required to carry. He was required to keep a lookout and be distracted while operating the bicycle. That's why Alm is different. In that case, there was a distinction between the special risk involved there, and then that reasoning by this court was then extended in Jones v. Bloomington, where officers in police cars driving a mobile office and distracted while doing so were engaged in a special risk than a normal motorist. This case is much more like Morgan, Olson, Fedorsky, and Summers. In Morgan, you had the officer who was filling out paperwork, something all of us are required to do, and then he fell out of his chair and got hurt. Probably because he wasn't in shape. Maybe. That certainly is hypothetically possible, Your Honor, but at the same time, it didn't rise to the level of a special risk. In Olson, you had a person who complained of migraines because of work-related stress. The court held everyone had stress. Police officers may be even exposed to more stress. I would certainly argue that in many cases they probably are in most professions, but at the same time, that was insufficient to rise to an active duty. Fedorsky v. Aurora. You have an evidence technician that is collecting evidence, is in the process of maintaining the chain of custody of that evidence, is transporting it back to a police station to secure the evidence and document the evidence. He's involved during that process in an automobile accident, and that was not found to be an active duty. Summers v. The Retirement Board certainly, I think, dooms the argument of a mandatory nature unless this court chooses to split from the First District's reasoning. In that case, you had a police officer who was ordered to deliver boxes. That was his job duty. During that process, even though it was a mandatory task, he was injured, and it was not found to be an active duty. Over and over again, the courts have said whether or not you're ordered to do something or not ordered to do something, you have to show the task you've been compelled to do or that you are doing involves some sort of risk not normally encountered by ordinary citizens. A special risk by virtue of your status as a police officer. Certainly. Well, maybe not by status, but by the status of the duty, by the nature of the act you've been required to do. So because of that, I don't think that the mandatory nature is the litmus test here. And that's why, in a long sort of circular way, circling back to what Justice Shostak had asked, no, if even he or her, during the mandatory portion of the fitness test, I don't believe that he would be entitled to a line-of-duty disability benefit. But going further, he was hurt during a voluntary act. And when he was asked why he did it, he said it was because it paid more and because it gave him personal pride. It didn't never, when he testified, did he say this put me in a position to better serve the people, to get out there and do my job better. That was not the motivation. So to the extent that motive is even relevant, it wasn't there. This was not done for the benefit of the people. This was not done for the benefit of including, of increasing service in any way. Now, while it may have that additional benefit, that certainly wasn't the driving force here. Do you see a policy argument that favors police officers being in better shape and being given incentives to be in better shape? Yes. And I think the collective bargaining agreement in this circumstance, the wisdom of the union choosing to enter into that being what it is, the policy there is that if you would like to continue being employed, you're going to maintain at least the 40 percent fitness level. There are additional ways to do it, but at the same time, those public policies should not be borne out on the back of the pension system. And that there's nothing in the statute that allows that public policy to be borne out on the back of the pension system. With regard to Mr. Cincinnati's arguments that somehow there's a public policy that favors the beneficiaries, that's absolutely true. But at the same time, you have to show that it's a benefit they would be entitled to under the statute. There's no need to read into the statute here. It's relatively unambiguous and well-settled law as to what active duty means. Active duty requires, again, a special risk by virtue of the nature of the work that is not encountered by normal civilians. In this case, many civilians every day choose to work out. Many civilians choose to engage in things like lifting weights. Many civilians are hurt while doing so. In this case, the pension system took care of Officer Schaefer. He receives a 50 percent not-in-the-line-of-duty disability pension. The employer may have also afforded additional benefits in the form of workers' compensation. Do you see a difference between the White case and the Wagner case? If you could remind me about Wagner. Okay, Wagner is the one where the police officer is serving papers, and they found that that was a duty unique to police officers. I mean, how different is that than, say, I mean, in White they're saying, well, anybody can get out of the car and put a flyer on someone's car. I don't think that was the distinction. I think the distinction with Wagner where they're serving the papers is that there's an inherent risk that's different there. It's different than being a delivery person or something else. There is an inherent risk in serving a warrant or serving those sort of things. There's a reason that SWAT teams commonly will serve warrants, and it's because there is an inherent special risk there. Unlike, as Mr. Cicinelli says, that somehow the active duty is created when you put on your gym shorts and T-shirt. Well, then why isn't the active duty then when you put on your uniform pants, Sam Brown belt, and go to work as a police officer with a badge? As the courts have repeatedly said, this district through the Fifth District, through the Supreme Court, being on duty is not the same thing as an active duty. And conflating the two expands the coverage of line of duty disability benefits well beyond what the legislature ever intended and well beyond what the courts across the states and the jurisprudence interpreting that statute have ever intended. I think the mandatory act argument is somewhat strengthened by the Supreme Court's holding in Johnson that I cited to your opposing counsel when the Supreme Court talked about the boss not having an option to respond to the motorist. But that wasn't the sole holding in Johnson, and in Johnson you also had that he was responding to a motorist. He was engaging in an activity that was different than a civilian counterpart, that he had a duty to respond to that, and that the duty of police officers and firefighters to run toward bad stuff as opposed to the rest of us who have an obligation, at least to ourselves commonly, to run away from it. And while there may be certain civilians who choose to do the opposite and do the good thing and are good Samaritans and are heroes every day like police officers and firefighters, that's different than what occurred here. What occurred here is somebody was involved in an ordinary activity that civilians engage in. He wasn't serving papers. He wasn't serving a warrant. He wasn't issuing a ticket. He was engaging in weightlifting. And that is not an active duty. Not everything that you do at work, even if it's mandatory, is an active duty. For instance, in Filsco versus Northlake, in that case you had an officer who was going out to his car to go on to patrol that he was required to do, and his foot got ran over. It was held not to be an active duty. In the end, in this case, as opposing counsel stated, wellness plans are more and more common in the corporate setting as they were here. That physical fitness, for insurance reasons or whatever the employer's motivation, are a routine portion of corporate civilian life as they are here. And, yes, there are things that we don't want to do or that we're required to do by virtue of accepting employment in any context. And this is the same thing. In your brief, you address standard of review, but you kind of give us a couple options and don't really come down on either side of them. Maybe you're just very confident in your argument and you don't really care what we decide. No, I certainly do care. I believe that it is a manifest way to the evidence argument because I think that it is key here, the resolution of the facts. It would be a manifest way. Well, that was what we initially argued. But I can understand why many would hold that it would be clear and convincing evidence as well because it's the application of facts. Clearly, it was wrong. Clearly, it was wrong. I'm sorry. So your initial argument was manifest way that this was an entirely factual issue? Does it have anything to do with the code that we've been talking about for the last 40 minutes? The manifest way was the application of the facts of the case. That was the standard that was applied in Marconi when determining whether or not something was an act of duty. That was why we had used it. But I can understand why the court also would apply the clearly erroneous standard as well. We believe that under either circumstance, the pension board would prevail because the law here, we believe, is so clear that there's no reason for much interpretation on that. The factual application, though, I think, led us to believe, regardless under either standard, that the defendant should have its decision affirmed. And we asked you to do that. Thank you. Thank you, Mr. Carlson. Mr. Cicinelli, rebuttal item. Mr. Cicinelli, before you begin, how is it that Fedorsky and the police officer who's really in the line of duty, I mean, who's going between the jail and the police department and vice versa, how is it that that is not a line of duty and you're saying, as your opponent says, you put on your tennis shoes and your gym trunks and immediately you're in the line of duty? Doesn't your argument throw you in the face of Fedorsky? To be quite frank, Your Honor, I, too, was questioning that decision. And it's hard for me to distinguish the two. I mean, I had to wrestle with that in my own mind. That decision is from our district, and in order for us to not follow it, we would have to determine that the decision is either flawed or unworkable. How is it either flawed or unworkable? Well, my comment is this. The question that our Supreme Court had to decide on and the ruling from this court centered on, does discretionary capacity come into play versus how is the individual acting at the time of the actual act? Was he acting in his or her official capacity or was not necessarily, was it a discretionary act? Not to get too convoluted, but in our case, we know that Officer Schaffer had no choice. He had no option. But to take that test with a 40%. Pardon me? But to take that test and give a 40% effort. That's correct. He had no option for that. That is correct. The next question is, in Fedorsky, did he have an option when he was injured? The question that comes to mind is, no, but what inherent special risk did he have traveling in his squad car? I guess theoretically he could have been hit and broadsided by another car, but so can any other ordinary citizen in their walk of life. What distinguishes our case is that no ordinary citizen, unlike Fedorsky, is mandated to take a physical fitness test. That's key here. There's no option here for Mike Schaffer, and that is why I argued earlier that the risk, the special risk, attaches once they make it mandatory because it takes the optional choice away from him. Had they made that strictly a voluntary program or policy, then I would concede that defendant board has more weight in their argument. I understand where you're going, but again, I'm wrestling with Fedorsky. How did he not, how did he have any discretion or option not to deliver the evidence from the jail to the police department or vice versa? Where was his discretion or non-discretion? I think the court was taking into consideration the actual act itself, and there is a difference between driving a vehicle versus bench-pressing weight. Don't people do bench-press every day? I mean, you go to any gym right now, you'll find a plethora of people bench-pressing, wouldn't you? Your Honor, I would concede that some people weight lift, but many do not. Some people drive, and many do not. Well, I would differ with that opinion. I think most American citizens over the age of 16 and even younger in rural areas drive a motor vehicle. So unlike how many are weight lifting, how many ordinary citizens are lifting boxes or writing notes on paper equivalent to writing a traffic ticket? Many. And putting them on cars. Well. Well, isn't that what that case said? That's the reason that they put down the white cases, because a lot of people can stick flyers on cars. But I don't see too many people sticking flyers on cars. No, but I think to answer your original question, Your Honor, that Fedorsky was dealing with the act itself and how they really would – the court at the time had to have been wrestling how much of a special risk is this versus – to an officer versus an ordinary citizen. I'm distinguishing this case by stating that I don't know too many ordinary citizens that are being mandated to take physical fitness tests. And granted, they were only required to do up to 40 percent, but there was a collective bargaining agreement awarding them work time or compensatory time off. I think it's only fair to argue that if the village knew that there was an increased risk of injury by exceeding the minimums, then why put it in there? If you are going to put it in there, then let the officers know that if they opted to use discretion and exceed the minimum, you run the risk of taking yourself out of the definition of what is considered an act of duty. So in my brief, that's why I argued that a decision in favor of the board will thwart all these collective bargaining agreements that are asking the officers to exceed minimums or even – you know, it's going to make everyone nervous on participating in these mandatory physical fitness tests if they're injured because now they're exposed to added liability. And my final point that I wanted to bring up is in a pension board, under this particular pension code, there's five pension members, two active police officers, one retired police officer, and two appointed civilians by the city or village. Those appointed civilians are there by the president or the mayor's discretion to oversee the village's interest. So they're not – to state that they don't have any – that the pension board is a separate entity, well, it's true, but they still have the village's interest at heart because why put the two civilians on the board? That's why we have judicial review, both in the circuit court and here. Make sure that decision was correct? Correct, Your Honor. We'd like to thank the attorneys for their arguments today. We'll take a short recess. The case will be taken under advisory.